DAVIS ET AL VS CARLISLE.

Opinion delivered October 19, 1904.

1. *Chattel Mortgages—Covering Future Advances—Good as Against Subsequent Mortgagee.*

Where a valid chattel mortgage is given to secure a note due at a further date, together with all other indebtedness from the mortgagor to the mortgagee which might accrue up to the date of maturity of the note, the same operates as security not only for the note but for subsequent advances or loans within the stipulated time, especially as against a subsequent or second mortgage subject to the first by its terms, and covering additional property.

Appeal from the United States Court for the Western District.

CHARLES W. RAYMOND, Judge.

Action by S. N. Carlisle against Henry Davis and others. Judgment for plaintiff. Defendants appeal. Affirmed.

The appellee, S. N. Carlisle, brought suit of replevin against appellant Henry Davis in Commissioners' Court for the recovery of 40 acres of cotton, which he claimed under a mortgage executed to him by Davis. The Hayes Mercantile Company was made a party defendant. Answer was filed, the case was tried, decision in favor of plaintiff, and appealed to the District Court at Muscogee. It was tried there, and again judgment was found in favor of plaintiff, and appealed here. The opinion states the facts.

*Deroos Bailey* and *Thos. H. Owen*, for appellants.

*Jess Watts* and *Wm. T. Hutchings*, for appellee *J. G. McCoombs*.

GILL, J. On the trial of the case in the District Court the appellee introduced evidence tending to prove the following facts, to wit: That on December 20, 1900, plaintiff sold to defendant Davis two mares for the sum of $207.47, and he executed a note for said sum, due October 1, 1901, with interest at 10 per cent. from date, secured by chattel mortgage on the animals and other personalty, including certain 40 acres of cotton. That afterwards, to wit, on March 11, 1901, plaintiff loaned to Davis the sum of $87, for which Davis executed a note due October 1, 1901, with interest at 10 per cent. from date, and thereafter, on July 8, 1901, plaintiff loaned to Davis $72 in cash, for which he executed his note to plaintiff, due October 1, 1901, with interest at 10 per cent. from date. That the following credits appear on said notes, to wit: First note, the following

credits: October 18, 1901, by cash $100; October 22, 1901, by cash $19.37. Second note, the following credits: October 8, 1901, by cash $22.09; October 12, 1901, by cash $32.05; October 24, 1901, $21.16. Third note, the following credits: September 13, 1901, $15.07; September 24, 1901, by cash $13.55; September 27, 1901, by cash $20.25; September 3, 1901, by cash $19.15. That said money advanced to Davis was for cultivation of the cotton covered by the mortgage. Davis delivered the proceeds of a part of the cotton covered by the mortgage to the plaintiff, and he applied these credits to the second and third notes as shown by the above statement. That Davis had paid about $260 out of the proceeds of the cotton, and by returning to plaintiff the mares bought from him he refused to deliver any more cotton, and claimed that he had paid off his mortgage, and upon such refusal to pay the balance claimed plaintiff brought this suit. The mortgage given by Davis to plaintiff was introduced in evidence. The clause in said mortgage under which plaintiff claimed the right to apply these payments to the second and third notes above mentioned reads as follows: "Whereas said party of the first part is indebted to the party of the second part in the sum of $207.47, and ten per cent: interest due October 1, 1901. Now if the said party of the first part shall well and truly pay to the party of the second part the sum hereinbefore mentioned (being $207.47, purchase price of the mares aforesaid) and all other indebtedness, including all other accounts made or given up to October 1st, 1901, to S. N. Carlisle, party of the second part, by the party of the first part, together with the cost of this trust, on or before the first day of October, 1901, then this conveyance shall be void, otherwise, to remain in full force and effect." Appellants introduced evidence tending to show that the mortgage executed to Carlisle by Davis was given at the time Davis bought the mares of Carlisle, and to secure the purchase price of said mares, and that there was no other indebtedness at that time contemplated between the parties or mentioned

in the transaction; that during the early part of the year 1901
Davis asked Carlisle if he could furnish him supplies and money
with which to make his crops in 1901, and was refused by Carlisle,
and Davis stated to him that he would have to make a mortgage
with Mr. Hayes to secure some supplies during the season; and
that afterward, on February 2, 1901, Davis executed to Hayes
Mercantile Company a chattel mortgage, which, in addition to
other personalty mentioned, covers the 40 acres of cotton in the
mortgage executed to plaintiff, Carlisle, and said mortgage
executed to the Hayes Mercantile Company was offered in evid-
ence.    When Davis delivered the proceeds of the cotton to Car-
lisle there was nothing said about the application of the pay-
ments until he had paid about $260, and then Davis stated to
plaintiff that he had paid enough out of the proceeds of the cotton
to pay off the mortgage after turning back the mares, and that
he wanted to get the first note, which was secured by the mortgage.
Carlisle then said to him that he had already applied the pay-
ments to the last two notes, and Davis told him that he would
not consent to that, and refused to deliver any more cotton under
the mortgage, and then Carlisle brought this suit.    That under
his mortgage executed to Hayes he bought supplies from the
Hayes Mercantile Company, and was indebted to them for sup-
plies at the time said suit was brought.

Appellants make four assignments of error, complaining in
the first, second, and third assignments of error that the court
refused to give to the jury certain instructions set out in said
assignments.    In the fourth assignment of error complaint was
made that the court did instruct the jury, over the objection of
appellants, as follows:    "Plaintiff's mortgage is a valid mortgage
securing not only the note for $207.47, but any other indebted-
ness or accounts by Davis to Carlisle from the date of the mort-
gage to October 1, 1901."    This instruction of the court is in
exact opposition to the three instructions asked by appellant,

and, if this instruction states the law, the first three assignments of error fail. An examination of the clause of the mortgage shows by its very wording that the parties at the time of its execution had in contemplation the securing not only of the $207.47, purchase price of the mares, but, in addition thereto, "all other indebtedness, including all other accounts made or given up to October 1, 1901, to S. N. Carlisle," by Davis; and the evidence shows that the money obtained from Carlisle on the two last notes was used by Davis in the cultivation of the 40 acres of cotton. An examination of appellant's mortgage shows that he took his mortgage subject to the first mortgage on the 40 acres of cotton and on other and different property than that mentioned in the first mortgage, and the court could not have instructed the jury otherwise than as it did, and there was no error in the court's instruction; nor was there error in the court's refusal to give the instructions asked by the appellant.

For a fifth assignment of error complaint is made that the court instructed the jury, over the objection of appellants, as follows: "Unless all the items of indebtedness made by Davis with Carlisle from date of mortgage to October 1, 1901, have been paid, your verdict should be for plaintiff." There is no doubt, as an abstract proposition of law, that this instruction ought to be allowed to stand. The evidence shows that these horses were delivered to plaintiff before he began this suit in addition to the cash payments. The evidence shows that the only credit given upon the three notes from Davis to plaintiff was cash derived as proceeds of cotton. The foregoing instruction of the court might be said to include the value of the horses, and, had there been evidence before the jury of what the value of the horses really was, the instructions certainly would have been complete and sufficient. Neither court nor jury had any testimony as to this value of the horses, so far as this record discloses. Appellants seem to have been satisfied to have shown to the jury

the cash realized from cotton delivered, and then the delivery back of the horses in the mortgage, trusting that the jury would in some way arrive at the conclusion that the mortgage was satisfied because the horses were delivered back in addition to the payments upon the notes; and the court in the instructions tells the jury fairly that, unless Davis paid Carlisle all he owed him from the date of the mortgage to October 1, 1901, their verdict would be for the plaintiff, if anything was due to him; and he further told them in the next instruction that, if they found all indebtedness had been paid arising from Davis to Carlisle, then they should find for the defendants.

We have carefully considered the authorities cited in the briefs in this case, and are unable to see how they belong directly or by analogy to the facts of this cause, except in a very general way. A distinction must be had between this case and that of a sale of the mortgaged property. It is certainly the rule that, "where a chattel mortgage is given to secure future advances, all advances made subsequent to a sale of the mortgaged property, the mortgagee having notice of such sale, will be postponed to the rights of such purchaser." But in this case the junior mortgage was taken subject to the first mortgage as to the 40 acres of cotton, and included other property than that mentioned in the first mortgage. The general principle on which this case depends is that, where a valid chattel mortgage is given to secure a note due at a certain date, and such mortgage contains a provision that the same shall be void unless on the payment of the first sum secured, together with payment of all other indebtedness, including all accounts made or given by the mortgagor to the mortgagee up to the coming due of the first note, such mortgage secures all indebtedness owing at the latter date from the mortgagor to the mortgagee; and where a second and junior mortgage is taken subject to the first mortgage such junior mortgagee is bound by notice of the first mortgage and its terms in his junior mortgage,

and he must be taken to have dealt with the securities mentioned in the first mortgage with reference to the rights and interests, or what may ripen into rights and interests, of the first mortgagee in such property under the terms of the mortgage. 1 Cobbey on Chattel Mortgages, §§ 141-143, 154; 2 Cobbey, § 1043.

We do not think that there is any error in the instructions of the court, and, finding no error in the record, the judgment of the court below will be affirmed.

TOWNSEND and CLAYTON, JJ., concur.